**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (NY Bar # 5590104)
ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Plaintiff's Counsel on Signature Page]

*Attorneys for Plaintiff,*
Theo Couderc

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**THEO COUDERC, Individually and On Behalf of All Others Similarly Situated,**

**Plaintiff,**

**v.**

**DR. SQUATCH, LLC, YETI INTERMEDIATE HOLDINGS II, LLC; SUMMIT MASTER COMPANY, LLC; and CONOPCO, INC.,**

**Defendants.**

**Case No.:** 5:26-cv-2332 (BKS/CBF)

**CLASS ACTION**
**COMPLAINT FOR VIOLATIONS OF:**

1) **NEW YORK DECEPTIVE PRACTICES ACT (N.Y. GEN. BUS. LAW § 349);**
2) **NEW YORK FALSE ADVERTISING LAW (N.Y. GEN. BUS. LAW § 350);**
3) **INTENTIONAL MISREPRESENTATION;**
4) **BREACH OF EXPRESS WARRANTY; and**
5) **UNJUST ENRICHMENT.**

**JURY TRIAL DEMANDED**

KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

## INTRODUCTION

1. Plaintiff Theo Couderc ("Mr. Couderc" or "Plaintiff"), individually and on behalf of all other similarly situated individuals, brings this class action complaint ("Complaint") for damages and any other available legal or equitable remedies resulting from the unlawful actions of Defendants Dr. Squatch, LLC ("Dr. Squatch"); Yeti Intermediate Holdings II, LLC ("Yeti"); Summit Master Company, LLC ("Summit"); and Conopco, Inc. d/b/a Unilever ("Unilever"), doing business as Dr. Squatch (each a "Defendant," and collectively, the "Defendants").

2. This Complaint concerns the unlawful, unfair, and deceptive labeling, marketing, distribution and sale of Dr. Squatch's personal care products, including representations that the products are "Made in USA,"[1] without providing clear and adequate disclosure that they contain foreign ingredients and components, as required by state and federal laws and regulations.

3. The unlawfully and deceptively represented products were sold through multiple channels, including but not limited to direct-to-consumer sales on Defendant's website, Defendant's Amazon.com ("Amazon") store, and third-party merchants operating both brick-and-mortar retail locations and online storefronts. By way of non-exhaustive example, Defendants' products are also sold online as well as through conventional retail outlets including convenience stores, grocery stores and other third-party retailers such as Target; Walmart; Instacart; Ulta Beauty; CVS Pharmacy; Walgreens; Albertsons Companies, Inc., grocery chains like Albertsons and Vons; and Kroger Co. grocery chains like Ralphs.

4. Plaintiff, who purchased Defendants' personal care products, which were represented as being "Made in USA," alleges the following upon personal

[1] For purposes of this Complaint, the term "Made in USA," includes all synonymous, substantially similar, or derivative unqualified U.S.-origin representations, including, but not limited to, "Handcrafted in the USA," "Crafted in the USA," "Manufactured in the USA," and "Made in the USA."

knowledge as to his own acts and experiences, and upon information and belief as to all other matters, based on the investigation conducted by his attorneys.

5. In the highly competitive personal care products industry, some companies seek to gain an unfair advantage by misleading consumers about their products. Defendants marketed their products as being of domestic origin without any qualification of the foreign ingredients or components contained therein. In truth, the products contained numerous foreign ingredients. As a result, Defendants' unqualified domestic origin claims, such as "Made in USA" were false, deceptive, misleading, and fraudulent, and consumers were harmed by paying a premium price for products that are not as represented. This practice violates federal regulations that require clear and adequate qualification of the foreign ingredients and components used in a product when domestic origin claims are made.

6. Numerous federal laws, rules, and regulations govern the labeling of consumer products, including products sold under the Dr. Squatch brand.

7. For example, the Federal Food, Drug, and Cosmetic Act ("FDCA"), and various state laws[2] that generally align with the FDCA govern the aspects of personal care product labeling discussed herein. These laws reflects a fundamental principle: **consumers have the right to know what they are purchasing**.

8. When companies misrepresent their products, or falsely claim their origin, they violate fundamental consumer protection laws. Such misconduct undermines consumer trust, distorts the marketplace, and grants an unfair competitive advantage.

9. Under both New York law[3] and the FDCA,[4] a product is considered misbranded if its labeling is false or misleading *in any particular*.

10. For example, Dr. Squatch's Men's Natural Soap, one of its best-selling products, which was purchased by Plaintiff, was falsely represented as being "Made

---

[2] *See* N.Y. Educ. Law §§ 6818(2)(a), 6811(9)

[3] *Id.*

[4] *See* 21 USC § 362(a).

KAZEROUNI LAW GROUP, APC

in USA," despite containing numerous foreign ingredients and components, including key ingredients. Dr. Squatch's "Made in USA" representation was also bolstered with iconography of the American flag on the products' packaging and in their marketing. These unqualified representations misled consumers, as detailed further herein.

11. Defendants marketed, advertised, and/or sold their products through express representations that they are "Made in USA," without any qualification or disclosure of foreign ingredients or components used therein. These claims appeared on the products themselves and in marketing materials, including those related to the products purchased by Plaintiff.

12. Upon information and belief, Defendants have also advertised and/or marketed the Class Products as being of domestic origin, without qualification of foreign ingredients or components, through channels beyond their labels, website and Amazon store, including but not limited to blogs, email newsletters, social media platforms, public relations driven press or media coverage, and out-of-home advertising. The full scope, content, and dissemination of Defendants' misleading and deceptive marketing is within the exclusive knowledge, control, and possession of Defendants and their agents, and therefore cannot be fully ascertained or pleaded without the benefit of discovery.

13. Defendants' conduct of labeling, marketing and/or selling deceptively labeled products bearing the aforementioned misrepresentations violates: (1) New York's Deceptive Practices Act ("DPA," N.Y. Gen. Bus. Law § 349); (2) New York's False Advertising Law ("FAL," N.Y. Gen. Bus. Law § 350); and constitutes (3) intentional misrepresentation, (4) breach of express warranty, and (5) unjust enrichment.

14. Defendants' conduct of labeling, marketing and/or selling deceptively labeled products bearing the representation that such products are "Made in USA" without qualification also violates N.Y. Educ. Law § 6818(2)(a), § 6811(9), the FDCA and 16 C.F.R. § 323 (Federal Trade Commission 2021) (the "MUSA Rule").

KAZEROUNI LAW GROUP, APC

15. This conduct caused Plaintiff, and other similarly situated consumers, damages and requires restitution in the alternative to damages.

16. In addition to the false and misleading claims regarding the specific products purchased by Plaintiff, e.g., Pine Tar, Fresh Falls, Birchwood Breeze, Wood Barrel Bourbon, Gold Moss, Grapefruit IPA, Cold Brew Cleanse, Deep Sea Goats Milk, Fight Scrub, Nautical Nonsense, Viserion's Freeze, Thousand Sword Scrub, Dragon's Blaze, Count Sudsula, Drunk'n Pumpkin, and Headless Rinse scent variations of Defendants' Men's Natural Soap (together, the "Products"), Dr. Squatch's other products, including, but not limited to, those identified in **Exhibit A** (the "Class Products"), were likewise labeled and/or marketed with the same deceptive representations, including unqualified claims that they were "Made in USA," and are subject to this lawsuit.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), because: (1) there is minimal diversity as Plaintiff is a citizen of New York; Dr. Squatch, LLC and Yeti Intermediate Holdings II, LLC are both Delaware limited liability companies with their principal places of business in California;[5] Summit Master Company, LLC is a Delaware entity with its principal place of business in Massachusetts;[6] and Conopco, Inc. is a

---

[5] According to Dr. Squatch's most recent Statement of Information filing with the California Secretary of State (filed on April 18, 2024), which was last accessed on November 2, 2026, both Dr. Squatch and Yeti Intermediate Holdings II, LLC, are Delaware companies located at 4065 Glencoe Avenue, Suite 300B, Marina Del Rey, California 90292.

[6] Summit Master Company, LLC's most recent Statement of Information (filed on May 19, 2025), which was accessed on November 2, 2026, states that it is located at 222 Berkley Street, 18th Floor, Boston, Massachusetts 02116 and that it is a Delaware company.



KAZEROUNI LAW GROUP, APC

New York corporation with its principal place of business in New Jersey[7]; (2) the amount in controversy in this matter exceeds $5 million, exclusive of interest and costs; and (3) there are more than one hundred (100) people in the putative class.

18. Venue is proper in the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in Onondaga County, New York which is within this judicial district; (ii) a substantial part of the conduct complained of herein occurred within this judicial district; and (iii) Defendants conducted business within this judicial district at all relevant times.

## PARTIES

19. Mr. Couderc is, and at all times mentioned herein was, a natural person, an individual citizen and resident of Onondaga County, New York.

20. Dr. Squatch, LLC, is a Delaware limited liability company, with its principal place of business at 4065 Glencoe Avenue, Suite 300B, Marina Del Rey, California 90292.

21. Yeti Intermediate Holdings II, LLC, is a Delaware limited liability company, which is, on information and belief, located at 4065 Glencoe Avenue, Suite 300B, Marina Del Rey, California 90292.[8]

22. Summit Master Company, LLC, is a Delaware limited liability company with its principal place of business at 222 Berkeley Street, 18th Floor, Boston, Massachusetts. At times during the Class Period, Defendant Summit owned and controlled Dr. Squatch when the conduct described herein occurred.

---

[7] According to Defendant Conopco, Inc.'s most recent Statement of Information filing with the California Secretary of State, dated May 6, 2026.

[8] Yeti Intermediate Holdings II, LLC, does not have an active profile on the California Secretary of State's website. However, Dr. Squatch's last-filed Statement of Information identifies Yeti Intermediate Holdings II, LLC, as Dr. Squatch's member/manager and indicates that it is located at the same address as Dr. Squatch.



KAZEROUNI LAW GROUP, APC

23. Conopco, Inc., is a New York corporation with its principle place of business at 111 River Street, 8th Floor, Hoboken, New Jersey 07030. At times during the Class Period, Defendant Unilever owned and controlled Dr. Squatch when the conduct described herein occurred.

24. Defendants have formulated, marketed, and/or sold personal care products and: (a) conducted business direct-to-consumer through Dr. Squatch's website and Amazon store; (b) conducted business through the websites of third-party vendors, including, but not limited to, Walmart.com, Target.com, and Instacart.com; and (c) distributed their products to be sold in brick and mortar stores including, but not limited to, grocery stores, convenience stores, pharmacies, and elsewhere.

25. Plaintiff alleges that at all relevant times Defendants conducted business throughout the State of New York, including within Onondaga County, and within this judicial district.

26. Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants, respectively.

## NATURE OF THE CASE

27. Founded in 2013, Defendant Dr. Squatch has grown into one of the leading, if not the leading, startup personal care brands in the United States. By as early as 2020, Dr. Squatch had reportedly crossed the $100 million per year revenue threshold,[9] underscoring the substantial scale, commercial reach, and market

[9] *See* Dr. Squatch Scales to $100 Million with Natural Soaps for Men, Practical Ecommerce (Jan. 22, 2021), https://www.practicalecommerce.com/dr-squatch-a-mens-soap-brand-scales-to-100-million ("Fast forward to 2021, and Dr. Squatch, Haldrup's company, sells its own natural soaps and other grooming products for men. Revenue in 2020 was roughly $100 million, having exploded from $5 million just 18 months earlier.").

penetration of its products.

28. In June 2025, as a result of Dr. Squatch's commercial success, Defendant Unilever acquired Dr. Squatch for a reported $1.5 billion.[10]

29. Summit is a private investment firm headquartered in Boston, Massachusetts. The firm focuses on investments in technology, healthcare, life sciences, and other growth-oriented industries. Upon information and belief, Summit manages approximately $35 billion in assets under management and acquired a majority ownership interest in Dr. Squatch in 2022, giving it the ability to influence and control the company's business operations, policies, and practices.

30. Unilever is a multinational consumer packaged goods company with operations throughout the world. Upon information and belief, Unilever generates annual revenues in excess of $50 billion. Unilever's acquisition of Dr. Squatch has resulted in ownership and control over Dr. Squatch's business operations, assets, marketing, and product portfolio.

31. Upon information and belief, both Summit and Unilever possessed substantial resources, sophisticated compliance capabilities, and extensive experience conducting due diligence in connection with the acquisition, ownership, operation, and oversight of consumer products companies. Through their respective ownership interests in Dr. Squatch, and through the diligence, compliance, reporting, and oversight processes ordinarily attendant to such transactions and investments, Summit and Unilever knew or should have known of the labeling, marketing, sourcing, and supply-chain practices relating to the Class Products, including the unqualified U.S.-origin representations challenged herein. Notwithstanding such knowledge, Summit and Unilever permitted, approved,

---

[10] *See* Unilever Just Dropped $1.5 Billion on a Soap Brand—Here's Why It Might Be Genius, Yahoo Finance (June 27, 2025), https://finance.yahoo.com/news/unilever-just-dropped-1-5-023628712.html ("Unilever (UN) is making a $1.5 billion move into the premium men's grooming game quietly snapping up Dr. Squatch…").



KAZEROUNI LAW GROUP, APC

ratified, and/or failed to prevent the continued marketing and sale of the Class Products with the misleading representations described in this Complaint.

32. Defendant Yeti is the sole entity identified as a "Member/Manager" of Defendant Dr. Squatch in filings with the California Secretary of State. [11] Upon information and belief, Defendant Yeti held an ownership interest in and/or exercised control over Defendant Dr. Squatch throughout the Class Period.

33. Defendants marketed and sold a portfolio of products through multiple distribution channels including, but not limited to, Dr. Squatch's own website,[12] Dr. Squatch's Amazon store,[13] through third-party retailers online as well as in brick and mortar stores.

34. Upon information and belief, Dr. Squatch currently generates annual revenues in the hundreds of millions of dollars.

35. Upon information and belief, the Class Products with a "Made in USA" representation continue to be sold in the stream of commerce.

36. As a result of its commercial success, Defendant Dr. Squatch possesses financial and professional resources that far exceed those available to typical emerging or startup consumer product companies, especially considering the resources at its disposal from Defendants Summit and Unilever.

37. Given Defendants' substantial resources and operational sophistication, it is difficult to conceive how Defendants could so blatantly disregard the well-established laws, rules, and regulations governing the labeling, marketing, and sale of personal care products.

---

[11] *See, supra*, n.10.

[12] *See* https://www.drsquatch.com

[13] *See* https://www.amazon.com/stores/DrSquatch/page/06543539-37D8-4A25-986B-5A60BA6C9815?ref_=cm_sw_r_ud_ast_store_KDYW27M4S99CNH322GWS



KAZEROUNI LAW GROUP, APC

38. At all relevant times, Defendants and their agents made material misrepresentations regarding the Class Products.

39. Defendants advertised, marketed, promoted, distributed and sold the Class Products as being "Made in USA," without disclosing that they contained foreign-sourced ingredients, including key components. These representations are false, unlawful, unfair, and deceptive.

40. Each consumer, including Plaintiff, was exposed to the same material misrepresentations, as virtually identical labels, packaging, and marketing materials were used in the promotion and sale of all Class Products nationwide, including within the State of New York.

41. Federal and state laws, rules, and regulations governing the truthful and accurate marketing and labeling of consumer products are well-established and clearly defined. Specifically, under the FDCA and N.Y. Educ. Law § 6818(2)(a), a product is considered *misbranded* if its labeling is false or misleading in any particular. New York law also prohibits manufacturing, selling, delivering for sale, holding for sale, or offering for sale a misbranded product. N.Y. Educ. Law § 6811(9). 21 U.S.C. § 321(m) states that the term "labeling" encompasses not only labels on the product or its container, but also *all written, printed, or graphic matter that accompanies the product*, including promotional brochures, advertising copies, and marketing materials, thereby bringing Defendants' off-package marketing claims, including those made on its social media accounts, within the scope of the statute.

42. Federal laws and regulations regarding the use of "Made in the United States" claims, including any synonymous claims, whether express or implied, are well-established and clearly defined with respect to products and services as discussed herein.

43. As a direct result of Defendants' unfair and deceptive practices, Plaintiff and other similarly situated consumers purchased the Class Products in reasonable



KAZEROUNI LAW GROUP, APC

reliance on Defendants' misrepresentations.

44. As a result, Plaintiff and other similarly situated consumers overpaid for the Class Products, purchased the Class Products over the products of competitors, and/or purchased the Class Products under the belief that the Defendants' representations were accurate, truthful and lawful. This includes initial and repeat purchases of the Class Products.

45. Despite clearly established and well-defined federal laws, rules, and regulations, including consumer protection laws, governing the labeling, marketing, and sale of products such as the Class Products in the United States, Defendants falsely, unfairly, and deceptively advertised, marketed, and sold their products, including the Products purchased by Plaintiff, as further detailed herein.

46. Had Plaintiff and other similarly situated consumers been aware that the labeling and marketing of the Class Products contained false, unfair and deceptive misrepresentations, they would have paid less for the Class Products.

47. As a result of Defendants' false, unfair, and deceptive statements and/or their failure to disclose the true contents of the Class Products, along with the other conduct described herein, Plaintiff and similarly situated consumers purchased hundreds of thousands of units of the Class Products across the United States, including in New York, and have suffered harm, including the loss of money and/or property.

48. Defendants' conduct regarding the labeling, marketing, distribution and sale of the Class Products, as alleged herein, violates multiple federal and New York laws, rules, and regulations, as detailed below.

49. This action seeks, among other things, in the alternative to damages and other remedies in law, equitable relief, restitution of all amounts unlawfully retained by Defendants, and disgorgement of all ill-gotten profits resulting from Defendants' alleged wrongdoing.



KAZEROUNI LAW GROUP, APC

## FACTUAL ALLEGATIONS

50. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

51. At all relevant times, including as of the filing of this Complaint, Defendants and/or their agents have made material misrepresentations regarding the Class Products.

### False U.S. Origin Claims

52. Defendants have produced, marketed, advertised, distributed and/or sold the Class Products, including the Products purchased by Plaintiff, as "Made in USA," without clear or adequate qualification.

53. The MUSA Rule clearly defines the meaning of "Made in the United States" or any synonymous representation[14] and outlines when such designations may be used without qualification. Specifically, clear and adequate qualifications must notify consumers if the good or service contains or is made with ingredients or components that are not made or sourced in the United States.[15]

54. Despite the clearly established and well-defined federal laws and regulations,

---

[14] *See* 16 C.F.R. § 323.1(a) ("**The term Made in the United States means any unqualified representation,** express or implied, **that a product or service**, or a specified component thereof, **is of U.S. origin**, **including**, but not limited to, a representation that such product or service is "**made**," "**manufactured**," "built," "produced," "created," or "**crafted**" **in the United States** or in America, **or any other unqualified U.S.-origin claim**.") (emphasis added).

[15] *See* 16 C.F.R. § 323.2 Prohibited Acts ("In connection with promoting or offering for sale any good or service, in or affecting commerce as "commerce" is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. 44, **it is an unfair or deceptive act or practice** within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), **to label any product as Made in the United States unless** the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, ***and*** **all or virtually all ingredients or components of the product are made and sourced in the United States**. (emphasis added).



KAZEROUNI LAW GROUP, APC

including consumer protection laws, regarding U.S. origin claims, Defendants falsely, unfairly and deceptively advertised, marketed and sold the Class Products, including the Products purchased by Plaintiff, as "Made in USA" without clear and adequate qualification informing consumers of the presence of foreign ingredients and/or components as further discussed herein.

55. Despite their unqualified "Made in USA" representations, the Class Products have been made using numerous ingredients and components that are neither domestically grown, sourced, nor produced.

56. For the Class Products, Defendants prominently and uniformly made substantially similar and unqualified U.S.-origin claims on product labeling, packaging, and advertising, including statements such as "Handcrafted in the USA," "Crafted in the USA," "Manufactured in the USA," and/or "Made in the USA." On product labeling and packaging, these representations frequently appeared in contrasting text and were visually separated from surrounding content, thereby emphasizing and reinforcing the message that the Class Products and their ingredients were of U.S. origin.

57. Defendants likewise disseminated the same unqualified U.S.-origin claims through their marketing and advertising channels, including social media platforms and third-party reseller websites. These representations were accompanied by prominent imagery of the American flag, further reinforcing and amplifying the message of domestic origin conveyed to consumers.

58. Below are non-exhaustive examples of the aforementioned misrepresentations regarding the Class Products:

KAZEROUNI LAW GROUP, APC







KAZEROUNI LAW GROUP, APC




KAZEROUNI LAW GROUP, APC




KAZEROUNI LAW GROUP, APC







KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC









59. Defendants' unqualified U.S. origin representations were prominently and consistently displayed on either the top or bottom panel of the Class Products' packaging and include virtually identical language and iconography.

60. As a result of the "Made in USA" representations on the Class Products packaging and in their advertising, online retailers have further propagated this misrepresentation through their websites' product pictures and descriptions, in addition to having sold the Class Products with unqualified "Made in USA" (or similar) misrepresentations on their shelves, where applicable.[16]

61. As a result of the unqualified U.S. origin claims on the Class Products' packaging and marketing, consumers have been misled for years, leading to both initial and repeat purchases of products they believed were made in the United States with ingredients and components sourced from the United States.

---

[16] For illustrative examples of Defendants' "Made in USA" (or similar) claims appearing on Amazon.com, Target.com and Walmart.com sales pages, *see* ¶ 58, above.

KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

62. Despite the prominent and unqualified claim that the Class Products were "Made in USA," they have been made with foreign ingredients, a fact that was not properly disclosed on the label, as the MUSA Rule and New York law require.

63. For example, the Men's Natural Soap products purchased by Plaintiff contain palm oil, coconut oil, olive oil, and shea butter, all of which are sourced from outside the United States.[17] These ingredients are not incidental additives. Rather, they are foundational components of Dr. Squatch's formulations and are essential to the products' composition, performance, and consumer appeal. Palm oil, coconut oil, and olive oil are, in that order, the *first three ingredients* listed in Dr. Squatch's Natural Soap products, including the Products purchased by Plaintiff. Shea butter likewise appears near the top of the ingredient list. The prominence of these foreign ingredients within the formulation underscores their importance and demonstrates that they contribute materially to the functionality, marketability, and overall value of the products.

64. The concentration and prominence of these alleged foreign ingredients throughout Dr. Squatch's formulations demonstrate that foreign content is a significant component of the Class Products. These ingredients collectively contribute to the Class Products' consumer appeal and overall value, and they cannot plausibly be characterized as *de minimis* or incidental. In any event, the foreign content in the Products and the Class Products is too substantial for those products to satisfy the MUSA Rule's requirement that "all or virtually all" ingredients or components be domestically made and sourced. 16 C.F.R. § 323.2(c).

65. Because the sourcing of numerous other chemically processed ingredients in the formulation cannot be determined through publicly available information and is solely within Defendants' possession, the full extent of the Class Products' foreign

---

[17] The factual basis and supporting authorities concerning the foreign sourcing of the ingredients identified herein are set forth in **Exhibit A**.

content can only be established through discovery.

66. Notwithstanding, based on publicly available information, Defendant is believed to use RSPO-certified palm oil in its Men's Natural Soap products.[18] However, according to the RSPO's website, there are no RSPO-certified growers within the United States.[19] Therefore, Defendants' Men's Natural Soap products cannot possibly be "Made in USA" because they use RSPO-certified palm oil.

67. The functional ingredients that provide the characteristics consumers actually purchase the products to obtain, including palm oil, coconut oil, olive oil, and shea butter assume correspondingly greater importance in the finished products. Given the material contribution of these foreign ingredients to the Class Products' performance and consumer appeal, it is implausible that the Class Products satisfy the MUSA Rule's requirement that "all or virtually all" ingredients or components be made and sourced in the United States. 16 C.F.R. § 323.2(c).

68. The foreign ingredients and components identified herein are not incidental additives or trace constituents. Rather, they help provide the very attributes Dr. Squatch promotes to consumers, including each of the Class Products' signature scents and moisturizing capabilities.

69. Despite the numerous foreign ingredients contained in the Class Products, Defendants have prominently, uniformly, and without qualification represented these products as "Made in USA" on their packaging and throughout their marketing.

70. Defendants' failure to disclose the use of foreign ingredients and components results in unqualified U.S.-origin claims that are unlawful, false, misleading, and

---

[18] https://www.drsquatch.com/pages/clean-for-all-mankind (last accessed Oct. 14, 2026) ("We use sustainable RSPO-certified palm oil . . ..").

[19] https://rspo.org/search-members/certified-growers/ (last accessed Oct. 14, 2026) (no results for United States RSPO-certified growers).

KAZEROUNI LAW GROUP, APC

likely to deceive reasonable consumers.

71. There is no federal or state law, rule, or regulation that requires products such as the Class Products to bear a "Made in USA," or any similar U.S. origin representation. Defendants' decision to include unqualified U.S. origin claims on the Class Products' packaging and in their marketing materials was therefore *voluntary* and driven solely by marketing, branding, and product-positioning considerations, rather than by any legal or regulatory obligation.

72. Had Plaintiff and other consumers similarly situated been made aware that the Class Products contained ingredients, including key ingredients, sourced from outside of the United States, they would have preferred to pay less for the Class Products.

73. Consumers are accustomed to seeing U.S. origin claims that are expressly qualified when products are made using foreign ingredients, such as representations stating "Made in the USA using global ingredients" or similar disclosures. In this marketplace context, Defendants' use of unqualified "Made in USA" representations conveyed to reasonable consumers that the Class Products and their ingredients were wholly or substantially of domestic origin. By omitting any qualifying disclosure despite the presence of key foreign-sourced ingredients and components, Defendants created a misleading net impression that deceived Plaintiff and other consumers into believing the Class Products met a higher domestic-origin standard than they in fact did.

74. Non-exhaustive examples of Defendants' competitors and other consumer products using properly qualified U.S. origin claims are shown below:


FREE OF PARABENS, PHTHALATES, DYES
USE: Rub a small amount in your palm and gently work into your beard until product disappears and fully absorbs. Style as desired.
INGREDIENTS: Water/Eau, Cetyl Alcohol, Caprylic/Capric Triglyceride, Butyrospermum Parkii (Shea) Butter, Behenyl Behenate, Glycerin, Cocos Nucifera (Coconut) Oil, Polyhydroxystearic Acid, Panthenol, Biotin, Hydrolyzed Soy Protein, Opuntia Ficus-Indica (Prickly Pear) Seed Oil, Tocopheryl Acetate, Fusanus Spicatus Wood (Sandalwood) Oil, Citrus Nobilis (Mandarin Orange) Peel Oil, Arctium Lappa (Burdock) Root Extract, Zea Mays (Corn) Starch, Euphorbia Cerifera (Candelilla) Wax, Pyridoxine HCl, Sodium Lauroyl Glutamate, Glyceryl Dilaurate, Glyceryl Stearate Citrate, Cetearyl Alcohol, Glyceryl Caprylate, Cetyl Esters, Sodium Polyacrylate Starch, Dimethicone, Cetrimonium Chloride, Carbomer, PVP, Sodium Gluconate, Dehydroacetic Acid, Benzyl Alcohol, Fragrance/Parfum
45% PCR TUBE
PLEASE RECYCLE*
ANIMAL TEST-FREE
Certified B
Dist. By: Presidio Brands, Inc., DBA EVERY MAN JACK Mill Valley, CA 94941 ©2023
*Visit everymanjack.com for more information. Made in the USA from domestic and imported ingredients and components.
BORN AT THE BASE OF MT. TAMALPAIS IN MARIN COUNTY, CA




75. Specifically, Defendants' conduct violated the MUSA Rule because they made unqualified U.S.-origin claims, such as "Made in USA," when, in fact, not "all or virtually all" ingredients and components are sourced domestically, as required by 16 C.F.R. § 323.2.

76. When considered collectively, the foreign-sourced ingredients and components described herein contribute materially to the functionality, performance, consumer appeal, marketability, and overall value of the Class Products.

77. The origin of other ingredients and components used by Defendants in the Class Products cannot be definitively traced through publicly available information - and since this information is exclusively known to Defendants at this time - Plaintiff cannot fully allege the extent of Defendants' unqualified "Made in USA" violations. These important facts are within the exclusive knowledge, control, and possession of Defendants, their contract manufacturers and agents, and cannot be fully ascertained or alleged without the benefit of discovery.

78. Defendants' willful disregard for the laws discussed herein for financial gain is well established by the aforementioned, non-exhaustive examples.

79. There is no reliable, competent, or commercially available laboratory testing

KAZEROUNI LAW GROUP, APC

method capable of determining the country of origin of ingredients from finished consumer products. Origin determinations depend on supply-chain documentation, sourcing records, and manufacturer-controlled Certificates of Analysis ("COA") and supplier disclosures, all of which are exclusively within Defendants' possession. Plaintiff therefore cannot obtain this information through testing, and the truth or falsity of Defendants' sourcing representations can only be verified through discovery of Defendants' and their agents' records.

80. Defendants possess superior knowledge of the true facts, which were not disclosed, thereby tolling the applicable statute of limitations.

81. The precise proportions of the ingredients and components in the Class Products are known only to Defendants and their agents. Plaintiff cannot reasonably determine or estimate those proportions without discovery. FDA regulations generally require ingredients to be listed in descending order of predominance.[20] The placement of the foreign ingredients identified above near the beginning of the Class Products' ingredient lists supports the inference that they are among the predominant ingredients in those formulations.

82. The identities of Defendants' suppliers, contract manufacturers, and other entities involved in the sourcing and production of the Class Products are likewise not publicly available and are presently unknown to Plaintiff. These facts, along with other material information regarding ingredient origin, composition, and valuation, can be readily obtained from Defendants through discovery.

83. Most consumers have limited awareness that products, along with their ingredients and components, labeled or marketed as made in the United States may, in fact, contain ingredients or components sourced, grown, or manufactured in foreign countries. This is a material factor in many purchasing decisions, as consumers believe they are buying superior goods while supporting American companies and jobs. Consumer disclosure regarding the true origin of products and

[20] *See* 21 C.F.R. § 701.3(a), (f)



KAZEROUNI LAW GROUP, APC

KAZEROUNI LAW GROUP, APC

their ingredients is therefore a central rationale underlying federal and state "Made in the USA" laws, including the MUSA Rule.

84. Ordinary consumers are not experts in consumer product formulations, nor are they expected to possess specialized knowledge concerning the nature or origin of product ingredients. Consumers reasonably rely on manufacturers to accurately represent their products, particularly when presented with unqualified "Made in USA" representations on labeling or in marketing materials. There is no reason for consumers to question such representations or to suspect that a manufacturer would deliberately misstate the contents, composition, or characteristics of its products.

85. On information and belief, Defendants either charged a premium for the Class Products compared to their competitors or gained a competitive advantage by having the Class Products chosen over others based on false, unqualified "Made in USA" claims. Federal rules and state laws are designed to protect consumers from such false representations and predatory conduct.

## FACTS SPECIFIC TO PLAINTIFF THEO COUDERC

86. Mr. Couderc has purchased several units of the Class Products, including in person at retailers like Target and from Dr. Squatch's website.

87. For example, on April 3, 2023, after visiting Dr. Squatch's website at www.drsquatch.com (the "Website"), Mr. Couderc purchased The Ultimate Squatch Starter Set Bundle, which included Defendants' Pine Tar, Birchwood Breeze, Wood Barrel Bourbon, and Fresh Falls Men's Natural Soaps; Soap Saver; and Pine Tar and Fresh Falls Deodorants after reviewing the marketing information for those products. This bundle cost Mr. Couderc a total of $52.92, inclusive of taxes and shipping.

88. The individual products' labeling and packaging (with the exception of the Soap Saver and the Deodorant products) in the bundle included unqualified "Handcrafted in the U.S.A." statements, located to the left of an American flag on the top panel of the products' packaging.

89. On July 19, 2024, Mr. Couderc visited the Website where he reviewed information and marketing materials about Dr. Squatch's products and decided to purchase Defendants' Fight Scrub 3-Pack Bundle, Freedom Fresh – Exclusive Edition 3-Pack Bundle, and Nautical Nonsense 3-Pack Bundle for a total of $51.00, inclusive of taxes and shipping. In making the purchase, Mr. Couderc understood that the products were represented as being domestically made, including their ingredients and components.

90. Each unit of the Fight Scrub Men's Natural Soap received by Mr. Couderc included the unqualified language "Handcrafted in the U.S.A.," located to the left of the American flag on the bottom panel of the product's packaging, above and to the right of the product's barcode. The Nautical Nonsense version of the same soap included the language "Handcrafted in the U.S.A." (without qualification) to the left of the American flag on the bottom panel of the product's packaging, above and to the right of the product's barcode.

91. On September 17, 2024, Mr. Couderc visited the Website, reviewed information and marketing materials about Dr. Squatch's products, and decided to purchase Defendants' Game of Thrones Collection bundle, The Star Wars 4-Pack II bundle, and Adamantium Scrub 3-Pack bundle for a total of $63.53, including taxes and shipping. In making the purchase, Mr. Couderc understood that the products were represented as being domestically made, including their ingredients and components.

92. The Game of Thrones Collection soap products, specifically, Viserion's Freeze, Thousand Sword Scrub, and Dragon's Blaze Men's Natural Soaps, included the unqualified "Handcrafted in the U.S.A." language, located to the left of the American flag on the bottom panel of those products' packaging.

93. On October 4, 2024, Mr. Couderc visited the Website, reviewed information and marketing materials about Dr. Squatch's products, and decided to purchase Defendants' Gold Moss, Grapefruit IPA, Cold Brew Cleanse, Deep Sea Goats Milk,



KAZEROUNI LAW GROUP, APC

and Flamin' Hot Bricc individual Men's Natural Soap as well as the Fearsome Fall 3-Pack Bundle, which included Count Sudsula, Drunk'n Pumpkin, and Headless Rinse Men's Natural Soap bars. Altogether, these products cost Plaintiff $49.68, inclusive of taxes and shipping. In making the purchase, Mr. Couderc understood that the products were represented as being domestically made, including their ingredients and components.

94. The Gold Moss, Grapefruit IPA, Cold Brew Cleanse, Deep Sea Goats Milk, and Fearsome Fall 3-Pack Bundle Plaintiff purchased on October 4, 2024, included the language "Handcrafted in the U.S.A," located to the left of an American flag on the top panel of the products' packaging. This representation was unqualified, and made no disclosure of *any* foreign ingredients or components used in Dr. Squatch's products, and upon information and belief was repeated in more than one place on the Website.

95. Non-exhaustive images of the unqualified U.S. origin representation made on the Website are reproduced below.

KAZEROUNI LAW GROUP, APC







KAZEROUNI LAW GROUP, APC

96. In addition to having purchased the Class Products on Defendants' Website, Mr. Couderc purchased the Class Products in person at a physical retail store.

97. For example, on January 28, 2025, Plaintiff visited a Target located at 340 Towne Drive, Fayetteville, New York, 13066-1371 ("Towne Drive Target"). While visiting the Health and Beauty section of that Target, Mr. Couderc noticed the Birchwood Breeze Men's Natural Soap on display, which Birchwood Breeze product said "Handcrafted in the U.S.A.," located to the left of the American flag on the top panel of the product's packaging. Mr. Couderc ultimately purchased the product for a total of $5.59, excluding taxes.

98. Plaintiff's reliance on Dr. Squatch's representations was reasonable under the circumstances. Ordinary consumers are not experts in consumer product formulations, nor are they expected to possess specialized knowledge regarding the nature or origin of product ingredients. Consumers reasonably trust that manufacturers will accurately represent their products, particularly when claims such as "Made in USA" are prominently displayed on product labeling and/or in marketing materials. There is no reason for consumers to doubt these representations or to suspect that a manufacturer would deliberately misstate the characteristics of its products.

99. For example, when consumers encounter express representations in a product's labeling, advertising, or marketing, they reasonably expect the product to possess the represented characteristics. A reasonable consumer would not expect that the product is materially inconsistent with those representations.

100. Similarly, Plaintiff's reliance on Defendants' unqualified "Made in USA" representations was reasonable. Consumers are accustomed to encountering clear qualifying disclosures, such as "Made in the USA *with globally sourced ingredients*," (emphasis added) when products marketed with U.S.-origin claims contain foreign-sourced ingredients or components. Accordingly, when consumers encounter an unqualified "Made in USA" claim, or a substantially similar



KAZEROUNI LAW GROUP, APC

representation, they reasonably understand it to mean that the product and its ingredients or components are wholly or substantially of domestic origin.

101. Defendants were under no legal obligation in the United States to label or market the Class Products as being of U.S. origin. However, once such representations are made, they are subject to strict regulatory standards. Defendants' use of "Made in USA" claims for the Class Products served no regulatory or compliance purpose. Rather, it was employed solely as a marketing device to enhance the Class Products' appeal to consumers such as Plaintiff.

102. Defendants' representations regarding the Class Products were unlawful, unfair, deceptive, and misleading, in that the Class Products were made with and/or contain ingredients or components that were sourced, grown, or manufactured outside the United States.

103. Accordingly, Defendants were not and are not entitled to lawfully make unqualified "Made in USA" claims that they made on and regarding the Products and the Class Products.

104. Defendants' representations were important to Plaintiff's decision to continuing purchasing the Products.

105. Plaintiff relied on the labeling, marketing, and/or advertising prepared and approved by Defendants and their agents, as disseminated through the Class Products' packaging and marketing containing the misrepresentations alleged herein.

106. Plaintiff was harmed because Defendants took Plaintiff's money due to their unlawful, false, unfair, and deceptive misrepresentations on the Class Products, including the Products purchased by Plaintiff.

107. Plaintiff and other similarly situated consumers were deceived by Defendants' unlawful actions.

108. Plaintiff believed, at the time of purchase, that the Products were of superior quality and that he was supporting American jobs, the American economy, the

KAZEROUNI LAW GROUP, APC

environment, and ethical working conditions by purchasing a product made with domestically sourced ingredients, rather than ingredients sourced, grown, or made outside the United States.

109. Ingredients and components grown or manufactured in the United States are subject to strict regulatory requirements, including, but not limited to, agricultural, environmental, labor, safety, ethical, and quality standards.

110. Foreign-sourced, grown, or manufactured ingredients and components are not subject to the same regulatory oversight, manufacturing standards, environmental protections, or quality-control requirements applicable in the United States, and may therefore present increased risks to consumers, the environment, and the domestic economy. These concerns are particularly significant for products intended for direct human application, including haircare, skincare, and other personal care products.

111. Foreign-sourced, grown, or manufactured ingredients and components are generally of lower quality and less reliable than their U.S. origin counterparts.

112. As of 2026, Dr. Squatch's website included a self-authored article from 2014 entitled "Soap Made in USA: Why It's Worth It," which echoed many of the concerns associated with ingredients and components sourced abroad for products sold domestically, including the loss of American jobs and the negative impact on our environment.[21]

113. Defendants have misrepresented the domestic origin of their products, which are alleged to contain foreign ingredients and components, despite apparently having shared many of the same concerns articulated in this Complaint.

114. False, unqualified, unfair and deceptive representations that products are "Made in USA" reduce overall customer satisfaction compared to if such products were genuinely made in the United States using ingredients and components

---

[21] https://www.drsquatch.com/blogs/blog/soap-made-in-usa-worth-it (last accessed July 13, 2026). This article has since been removed from Defendant's website.

sourced, grown, or made domestically.

115. The Class Products, including the Products purchased by Plaintiff, contain foreign ingredients and are not worth the purchase price paid by Plaintiff and putative Class members.

116. The precise amount of damages will be proven at the time of trial.

117. Plaintiff and Class members suffered injury in fact and lost money or property as a direct result of Defendants' false, unlawful, unfair, and deceptive representations, including unqualified "Made in USA" claims despite the presence of foreign-sourced ingredients and components in the products.

118. Defendants' false, unlawful, unfair, and deceptive advertising of the Class Products presents an ongoing threat to consumers, as this conduct continues to this day through Defendants' direct actions or omissions, and/or through the conduct of its agents.

## CLASS ALLEGATIONS

119. Plaintiff brings this action on behalf of himself and all other similarly situated individuals.

120. Plaintiff is a member of and seeks to represent a New York Class, pursuant to Fed. R. Civ. P. 23(b)(3), defined as:

> All persons in New York who purchased one or more of the Class Products, between May 5, 2021, and May 5, 2025 that were marketed or represented as "Made in USA," or any synonymous representation on the product or in its marketing materials, but which contain and/or are made with ingredients or components not grown or manufactured in the United States.

121. The New York Class shall be referred to herein as the "Class."

122. Excluded from the Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants; and persons

who purchased the Class Products for resale. Further excluded from the Class are members of the judiciary to whom this case is assigned.

123. Plaintiff reserves the right to modify the proposed Class definition, including but not limited to expanding the Class to protect additional individuals, including in other states, and to assert additional sub-classes as warranted by additional investigation.

124. Numerosity: Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, based on information and belief, the Class consists of thousands of individuals within New York.

125. Commonality: There are questions of law and fact common to the Class, which predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

- The nature, scope, and operations of Defendants' wrongful practices;
- Whether the Class Products are or have been made with foreign ingredients or components;
- Whether the Class Products are or have been represented as being of domestic origin without clear and adequate qualification;
- Whether Defendants intentionally misrepresented or omitted the fact that the Class Products, including the Products purchased by Plaintiff and other Class members, were misbranded and thus sold unlawfully in New York;
- Whether Defendants knew or should have known that their business practices were unfair and/or unlawful;
- Whether Defendants' conduct violated the DPA;
- Whether Defendants' conduct violated the FAL;
- Whether Defendants were unjustly enriched;

KAZEROUNI LAW GROUP, APC

- Whether Defendants breached express warranties to Plaintiff and members of the Class;
- Whether Defendants intentionally misrepresented their products; and
- Whether Plaintiff and Class members suffered monetary damages as a result of Defendants' conduct and, if so, the appropriate amount of damages.

126. Typicality: Plaintiff's claims are typical of those of the Class. Plaintiff and all Class members have been harmed by Defendants' wrongful practices. Plaintiff's claims arise from the same course of conduct that gave rise to the claims of the Class and are based on the same legal theories. Specifically, Plaintiff purchased one or more of the Class Products that were labeled, represented and/or advertised as being "Made in USA" or a similar representation, without clear and adequate qualification of the foreign ingredients or components contained therein.

127. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff's counsel is competent and experienced in litigating consumer class actions. Plaintiff has retained counsel experienced in consumer protection law, including complex class action litigation involving unfair business practices. Plaintiff has no adverse or antagonistic interests to those of the Class and will fairly and adequately protect the interests of the Class. Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Class.

128. Predominance: Defendants have engaged in a common course of conduct toward Plaintiff and Class members, in that Plaintiff and Class members were induced to purchase the Class Products. The common issues arising from Defendants' conduct set out above affecting Class members predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

KAZEROUNI LAW GROUP, APC

129. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most members of the Class would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

130. Unless the Class is certified, Defendants will retain monies received as a result of their unlawful, unfair and deceptive conduct alleged herein.

131. Defendants have acted on grounds that apply generally to the Class, so that Class certification is appropriate.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violations of New York's Deceptive Practices Act ("DPA")**
**(N.Y. Gen. Bus. Law §§ 349, *et seq.*)**

132. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

133. The DPA states that "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a).

134. The DPA further states that "any person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever greater . . .[, t]he court may in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to

one thousand dollars, if the court finds defendant willfully or knowingly violated this section[, and that t]he court may award reasonable attorney's fees to a prevailing plaintiff." *Id.* at § 349(h).

135. The DPA "seeks to ensure an honest market place where trust, and not deception, prevails . . .." *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 (2002) (internal quotation marks omitted).

136. Defendants engaged in deceptive acts and practices in violation of the DPA by misleading Plaintiff and the Class to believe that its Class Products were made domestically, without qualification.

137. Plaintiff and the Class are consumers, as that term is used in the context of the DPA. Defendants' products are consumer-oriented as they are sold to consumers, such as Plaintiff and Class members, for daily personal care purposes.

138. Defendants' conduct has been materially misleading because said conduct is not only likely to mislead a reasonable consumer acting reasonably under the circumstances, but Defendants have misled Plaintiff and the Class, as is alleged herein.

139. Plaintiff purchased the Class Products online and in-store with the belief that he was purchasing items that were domestically made based on Defendants' representations on Dr. Squatch's website and on the Class Products' top and bottom packaging labels (while purchasing Class Products in store) stating that they were "Handcrafted in the U.S.A.," "Crafted in the U.S.A.," and/or another unqualified "Made in USA" claim.

140. Defendants' conduct was knowing and willful because they were in the unique position of knowing the foreign origin of the Class Products' ingredients and components, yet they continued to represent those products as being made in the United States, without clear and adequate qualification of the foreign ingredients and components contained therein.

141. As a direct and proximate result of Defendants' aforementioned conduct, Plaintiff and the Class have been damaged in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Violations of New York's False Advertising Law ("FAL")**
**(N.Y. Gen. Bus. Law §§ 350, *et seq.*)**

142. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

143. New York's False Advertising Law ("FAL"), N.Y. Gen. Bus. Law §§ 350, *et seq.*, states that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

144. The FAL defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms of conditions of any employment opportunity if such advertising is misleading in a material respect." *Id.* at § 350-a.

145. Furthermore, "[i]n determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual." *Id.*

146. Defendants' material misrepresentations and omissions, as alleged herein, violate the FAL. Defendants knew or should have known that these misrepresentations and omissions were false, unlawful, unfair, deceptive, and misleading. This includes, but is not limited to, the representations that the Class Products are "Made in USA" despite containing foreign-grown, sourced, or manufactured ingredients and components.



KAZEROUNI LAW GROUP, APC

147. Defendants' conduct was knowing and willful because they were in the unique position of knowing the foreign origin of the Class Products' ingredients and components, yet they continued to represent those products as being made in the USA, without clear and adequate qualification of the foreign ingredients and components contained therein.

148. Plaintiff and the Class suffered tangible, concrete injuries as a result of Defendants' actions, as set forth herein, because they purchased the Class Products in reliance on Defendants' misrepresentations.

149. As a result, Plaintiff and the Class are entitled to the remedies enumerated in N.Y. Gen. Bus. Law § 350-e, which states that "[a]ny person who has been injured by reason of any violation of [the FAL] may bring . . . an action to recover his or her actual damages or five hundred dollars, whichever is greater . . .. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages, up to ten thousand dollars, if the court finds that the defendant willfully or knowingly violated [the FAL]. The court may award reasonable attorney's fees to a prevailing plaintiff."

## <u>THIRD CAUSE OF ACTION</u>
## Breach of Express Warranty

150. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

151. Under New York law, the elements for a breach of express warranty claim are a material representation expressly made about the product by the defendant, reliance on the truthfulness of the representation by the plaintiff, the product failing to live up to the representation, and resulting damage to the plaintiff.

152. Defendants represented to Plaintiff and similarly situated consumers, through their labeling, advertising, and marketing, that the Class Products are "Made in USA" without any qualification or disclosure of the inclusion of foreign ingredients and components.

KAZEROUNI LAW GROUP, APC

153. Defendants' representations regarding the unqualified domestic origin of the Class Products constitute affirmations of fact.

154. Defendants' explicit claims that the Class Products are "Made in USA," without qualification, directly pertain to the composition of the products. These representations form a fundamental part of the bargain between Defendants and purchasers, influencing consumer purchasing decisions and expectations.

155. Defendants' statements—prominently featured on the labeling and marketing of the Class Products—constitute express warranties regarding the composition and origin of the products and their ingredients.

156. Relying on these express warranties, Plaintiff and Class members purchased the Class Products, believing these warranties.

157. Defendants breached their express warranties by falsely representing that the Class Products were "Made in USA," without qualification, when, in reality, they contained foreign-sourced ingredients.

158. As a result of Defendants' breach, Plaintiff and Class members suffered harm and are entitled to recover either the full purchase price of the Class Products or the difference between their actual value and the value they would have held if Defendants' representations regarding the Class Products had been accurate, truthful, and lawful.

159. Plaintiff and Class members did not receive the benefit of their bargain and sustained additional injuries, as alleged herein.

160. Had Plaintiff and Class members known the true nature and origin of the ingredients of the Class Products, they would have paid less for those products.

161. Defendants' misrepresentations were a substantial factor in causing Plaintiff and the Class economic harm.

//

//



KAZEROUNI LAW GROUP, APC

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**

162. Plaintiff pleads this unjust enrichment cause of action in the alternative to contract-based claims.

163. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

164. Under New York law, the elements of unjust enrichment are the defendant's enrichment at the expense of the plaintiff and that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered.

165. Defendants were enriched at the expense of Plaintiff and the Class when Plaintiff and members of the Class purchased the Class Products, which Defendants misrepresented as to their origin.

166. Plaintiff and Class members allege that Defendants owe them money for the unjust conduct described herein that resulted in the wrongful acquisition of funds.

167. An undue advantage was taken of Plaintiff's and the Class's lack of knowledge of the deception, resulting in money being extracted to which Defendants had no legal right.

168. Defendants are therefore indebted to Plaintiff and the Class in a specific sum—the amount of money each paid for the Class Products, which Defendants should not retain in equity and good conscience.

169. Defendants are therefore liable to Plaintiff and the Class for the amount of unjust enrichment.

170. Defendants' retention of any benefit, whether directly or indirectly collected from Plaintiff and the Class, violates principles of justice, equity, and good conscience.

171. As a result, Defendants have been and continue to be unjustly enriched.

172. Plaintiff and the Class are entitled to recover from Defendants all amounts that Defendants have wrongfully and improperly obtained, and Defendants should

be required to disgorge to Plaintiff and the Class the benefits they have unjustly received.

173. Defendants accepted and retained such benefits with knowledge that Plaintiff's and the Class's rights were being violated for financial gain. Defendants have been unjustly enriched by retaining the revenues and profits obtained from Plaintiff and the Class, and such retention under these circumstances is both unjust and inequitable.

174. As a direct and proximate result of Defendants' unlawful practices and the retention of monies paid by Plaintiff and the Class, Plaintiff and the Class have suffered concrete harm and injury.

175. Defendants' retention of the non-gratuitous benefits conferred upon it by Plaintiff and the Class would be unjust and inequitable.

176. Plaintiff and the Class are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendants, in a manner to be determined by this Court.

## FIFTH CAUSE OF ACTION
## Intentional Misrepresentation

177. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein, and further alleges as follows:

178. Under New York law, the elements of an intentional misrepresentation claim are a material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages.

179. Defendants knowingly and intentionally represented to the public, including Plaintiff and the Class, through their marketing, advertising, labeling, and other means, that the Class Products are "Made in USA" without any qualification of foreign ingredients and components contained therein. The representation was unfair, deceptive, false and misleading because the Class Products contain multiple ingredients and components that are sourced from outside the United States.



KAZEROUNI LAW GROUP, APC

180. The "Made in USA" representation was material to Plaintiff and putative Class members because they saw it as a bonus to their decision to purchase the Class Products, and they would have paid less for the Class Products had they known the truth behind Defendants' "Made in USA" claims.

181. Defendants knew their representations were false because they maintain full control over the formulation and manufacturing of the Class Products.

182. Defendants acted intentionally by willfully and purposefully disseminating misrepresentations about the Class Products through labeling, online and offline marketing, advertising, and social media.

183. Indeed, Defendants intended to induce Plaintiff's and Class members' reliance on the "Made in USA" representation because, on information and belief, they wanted to gain a competitive advantage for their Class Products compared to competitors' products in the marketplace.

184. However, as described above, Defendants' representations regarding the Class Products are false, unlawful, unfair, deceptive and/or misleading.

185. Defendants knew that their "Made in USA" representation regarding the Class Products were false, unlawful, unfair, deceptive, and/or misleading, yet they continued to make such representations over a period of years.

186. Defendants further knew that their agents, and retailers were marketing the Class Products in a false or misleading manner, as Defendants designed, manufactured, and affixed the product labeling to the Class Products before supplying them to retailers. Additionally, Defendants provided their agents, and retailers with marketing materials that contained their false and misleading representations, thereby perpetuating the deception.

187. Plaintiff and the putative Class members saw, believed, and relied on Defendants' misrepresentations when deciding to purchase the Class Products. Indeed, Plaintiff and Class members reasonably relied on the express representations on the Class Products in making their purchases as there was

nothing in Defendants' labeling, packaging, and marketing materials remotely suggesting that their Class Products contained foreign ingredients or components.

188. As a direct and proximate result of Defendants' intentional misrepresentations described above, Plaintiff and the putative Class suffered damages in an amount to be determined at trial.

189. By engaging in the acts described above, Plaintiff and the putative Class are entitled to recover exemplary or punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, and each of them, as follows, seeking equitable relief in the alternative to legal relief:

- Certification of this action as a class action;
- Appointment of Plaintiff as Class Representative;
- Appointment of Plaintiff's attorneys as Class Counsel;
- That Defendants' wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutes asserted herein;
- An Order requiring Defendants to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;
- An Order requiring the imposition of a constructive trust and/or disgorgement of Defendants' ill-gotten gains, compelling Defendants to pay restitution to Plaintiff and all members of the Class, and to restore to Plaintiff and Class members all funds acquired through any act or practice declared by this Court to be unlawful, fraudulent, unfair, or deceptive; in violation of laws, statutes, or regulations; or constituting unfair competition, along with pre- and post-judgment interest thereon;
- For pre and post-judgment interest on all amounts awarded;
- For an order of restitution and all other forms of equitable monetary relief, as pleaded;
- Actual and statutory damages under the DPA and FAL;

KAZEROUNI LAW GROUP, APC

- General and compensatory damages in an amount to be determined at trial;
- That Plaintiff and each of the other members of the Class recover their costs of suit, including reasonable attorneys' fees and expenses pursuant to, *inter alia*, the DPA and FAL; and
- That Plaintiff and members of the Class be granted any other relief the Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

190. Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: November 12, 2026

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: _/s/ *Abbas Kazerounian*___
Abbas Kazerounian, Esq.
ak@kazlg.com
*ATTORNEYS FOR PLAINTIFF*

**Additional Plaintiff's Counsel**
**KAZEROUNI LAW GROUP, APC**
Gil Melili, Esq. (*pro hac vice forthcoming*)
gil@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (*pro hac vice forthcoming*)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, UT 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

KAZEROUNI LAW GROUP, APC